IN THE UNITED STATES DISTRICT COURT OF OHIO
SOUTHERN DISTRICT
WESTERN DIVISION

| | | |
|---|---|---|
| TRIDENT TRUST COMPANY (UK) LTD<br>7 Welbeck Street<br>London W1G 9YE<br>United Kingdom,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANGLO-AMERICAN CREDIT UNION, INC.<br>503 South Pierre Street<br>Pierre, South Dakota  57501-4522,<br><br>and<br><br>FIDELITY INVESTMENTS<br>3805 Edwards Road, Suite 110<br>Cincinnati, Ohio  45209,<br><br>　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CASE NO.:  _____<br><br><br>JUDGE _____<br><br><br><br><br>**COMPLAINT**<br><br>**(JURY DEMAND ENDORSED HEREON)** |

For its Complaint against Defendants Anglo-American Credit Union, Inc. and Fidelity Investments, Plaintiff Trident Trust Company (UK) Ltd states as follows:

**PARTIES, JURISDICTION AND VENUE**

　　1.　Plaintiff Trident Trust Company (UK) Ltd ("Trident) is a foreign trustee registered in the United Kingdom, with its principal place of business located therein and is a citizen and subject of a foreign state.

　　2.　Defendant Anglo-American Credit Union, Inc. ("AACU") is a South Dakota corporation.  Upon information and belief,  AACU's principal place of business is in Switzerland or another foreign state.

3. Defendant Fidelity Investments ("Fidelity") is a Massachusetts corporation with its principal place of business in Massachusetts. Upon information and belief, Fidelity is a securities brokerage company affiliated with Fidelity Investments Institutional Services Company, Inc. Fidelity has an office in Ohio at 3805 Edwards Road, Suite 110, Cincinnati, Ohio 45209 through which the account that is a subject of this matter as set forth below is managed and/or located.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state.

5. This Court has jurisdiction over the Defendants in this matter because Plaintiff's claims arise out of transactions that took place in this State.

6. Venue is proper as is the judicial district pursuant to 28 U.S.C. §1391 because this action is brought is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of this action is situated.

## FACTS COMMON TO ALL CLAIMS

7. On or about January 18, 2006, Neil Marlow, managing director of Bridford Financial Solutions, Ltd. ("Bridford"), a registered company under British law, and Andrew Derrick John Farmiloe, a solicitor, executed a Trust Deed captioned "For the Establishment of the Optimum Returns (BFIG) Scheme" (the "Trust Deed") under which Messrs. Marlow and Farmiloe agreed to act as co-trustees of a fund to consist of future contributions to be made by prospective investors (the "Trust"). A copy of the Trust Deed is attached hereto as **EXHIBIT A**.

2

8.  The Trust Deed describes an investment plan, referred to in the Trust Deed as the "Scheme". The Scheme is described in the schedule to the Trust Deed captioned "Terms and Conditions" beginning at page 9 of the Trust Deed.

9.  In general, the Scheme is designed to provide a guaranteed minimum return of at least 6% to the prospective investors at the end of 52 weeks. After certain undertakings are met, the investors would deposit funds into a bank account in the name of the Trust.

10. Once a minimum level of deposits were made into the Trust bank account, the trustees would then seek to place the funds in another bank ("Qualifying Bank"), which Qualifying Bank would then guarantee the funds through a letter of credit or other technique (referred to below as "Guarantee") the minimum return of 6% on the deposits. The investors' funds were thus to be secured. (The Trust's scheme is hereinafter referred to as the "Product.")

11. Shortly after execution of the Trust Deed, Bridford and the co-trustees Marlow and Farmiloe agreed that Bridford would be appointed to conduct certain administrative duties of the Trust. In practical terms, these duties involved Bridford handling and depositing the checks of the investors and communicating with the investors.

12. On March 14, 2006, Tim Marlow, also a director of Bridford, spoke to Barry Short, a director of Trident, regarding the possible appointment of Trident as corporate trustee for the Trust.

13. On the understanding that the Qualifying Bank would be identified and agree to provide the Guarantee in order to ensure the security of the investors' funds, Trident agreed to become a co-trustee of the Trust. By Deed of Retirement and Appointment of Trustees, dated March 29, 2006, a copy of which is attached hereto as **EXHIBIT B**, Neil Marlow retired as a co-

3

trustee of the Trust and Trident was appointed as a substitute trustee of the Trust. Farmiloe remained as an individual co-trustee of the Trust.

14. The marketing of the Product was conducted by Bridford, with the Product being marketed to other financial advisers.

15. Funds solicited by Bridford from investors were initially deposited in a Trust account at the Royal Bank of Scotland ("RBS"). When it became a Trustee, Trident was added to the bank mandate of the Trust bank account at RBS. The other signatory is co-trustee Farmiloe. The Trust requires joint signatures.

16. The funds deposited in the RBS Trust account continued to earn interest. However, it appeared to Trident that the Product would not launch due to the inability to locate a guarantor.

17. In August 2006, Bridford advised Trident that discussions were being conducted with Bankhaus Lampe, a German bank, regarding a guaranty. By this time, discussions were also being conducted by Bridford with Defendant AACU, an investment manager that, according to Bridford, was to assist in securing the Guarantee.

18. During the last week of August 2006, the Trust was in a position to secure the guarantee with Bankhaus Lampe.

19. In furtherance of the Trust purposes, on or around August 23, 2006 co-trustees Trident and Farmiloe authorized transfer of the Trust funds on deposit at RBS, which now stood at £9,417,207, to Bankhaus Lampe. The funds were confirmed by Bankhaus Lampe as having been transferred to an account in the name of AACU.

20. A telecopy addressed to RBS from Bankhaus Lampe, referred to as "Pre-Advice" and dated August 17, 2006, stated that securities from an AA rated Financial Services Authority authorized bank or financial institution were expected to be deposited and held in the AACU

account, in order to secure the return of the capital and 6% interest payment in the amount of £9,452,000, which would be payable after the term of 52 weeks. A copy of the telecopy is attached hereto as **EXHIBIT C**.

21. On September 5, 2006, Bankhaus Lampe confirmed that AACU purchased for the account the equivalent of £9,439,763,69 Goldman Sachs notes, and that said notes were on deposit at Bankhaus Lampe in AACU's account. A copy of the Bankhaus Lampe confirmation is attached hereto as **EXHIBIT D.**

22. By Addendum dated September 11, 2006, AACU confirmed that the purpose of the Goldman Sachs notes was to secure repayment of the investors' funds plus interest that were transferred from the Trust's account at RBS to AACU's account at Bankhaus Lampe. A copy of the Addendum is attached hereto as **EXHIBIT E**.

23. In view of the approaching end of the 52 week period (September 5, 2007) and the requirement to wind up the Trust, Trident's Nigel Grant, a director of Trident, sent an e-mail to Neil Marlow, a Bridford director, to seek confirmation of the proposed arrangements for wind up and administration of the funds. Mr. Grant asked if co-trustee Farmiloe would be coordinating the redemption process of the Goldman Sachs notes and whether Bridford would be administering the payments back to the investors. A copy of Mr. Grant's email is attached hereto as **EXHIBIT F**.

24. Bridford's Neil Marlow contacted AACU and learned that Bridford would be coordinating with AACU the redemption of the Goldman Sachs notes and transferring the proceeds to the Trust's account at RBS for repayment to the investors. Mr. Marlow so advised Trident. On July 30, 2007, AACU confirmed to Bridford that "payment back on the Goldman

5

Sachs notes (9,452,000 £ plus 6% interest) are expected to be repaid at the latest on September 5, 2007." See. **EXHIBIT G**.

25. On September 13, 2007, Trident's Mr. Grant countersigned 58 investors' checks for a total amount of £10,344,859 and posted them to Bridford for distribution and administration as requested by Bridford. Bridford advised that copies of the Trust's bank statements and a record of receipts and payments would be sent to co-trustee Farmiloe to confirm that the Trust had been wound up for the purposes of British legal reporting requirements. A copy of the Bridford letter dated September 7, 2007 is attached hereto as **EXHIBIT H.**

26. On September 26, 2007, Trident's Mr. Grant received a telephone call from Philip Porter of Morgans, an independent financial adviser, on behalf of investors in the Trust. Mr. Porter advised that he had been unable to contact Neil Marlow and that checks that had been tendered to, and deposited by, the Morgans' investors would be returned for insufficient funds, as funds were not available in the Trust account at RBS.

27. Mr. Grant contacted Neil Marlow to seek an explanation as to why the Trust had not received the funds as represented and why Bridford had nevertheless sent out the checks to Morgans' investors. Bridford subsequently arranged for payment to be stopped on the investors' checks that had not yet been deposited.

28. Bridford advised that the Trust would have the funds by September 28, 2007. Bridford further advised that a Certificate of Deposit had been deposited with Barclay's Bank in London and that AACU's Mr. Lobe was to use this vehicle to raise a capital margin with JP Morgan, in order to repay the Trust. Bridford advised that the aim was to have the funds back by Friday September 28 or Monday October 1, 2007.

29. On October 1, 2007, Bridford forwarded to Trident a letter from AACU addressed to Bridford confirming "full responsibility that the Capital of an amount of £9,452,000 which is managed by our Company in relation with an Asset Management Agreement established between us and Bridford Financial Solutions Ltd. in August 2006 is safe in its totality". A copy of the AACU letter is attached hereto as **EXHIBIT I**. The sum to be returned is the equivalent of in excess of $18,000,000.00.

30. On October 2, 2007, Bridford advised Trident that AACU's Mr. Lobe stated that he was awaiting a Certificate of Deposit to be issued by Barclay's and that there was nothing more that Trident needed to do. Furthermore, Bridford advised Trident that an alternative credit line was being sought by Mr. Lobe with the credit line ready with Royal Bank of Canada in the USA. A copy of Bridford's advice is attached hereto as **EXHIBIT J.**

31. On October 2, 2007, co-trustee Farmiloe sent an e-mail to AACU to advise "Further to correspondence with Bridford, you will understand that the Trustees of the Optimum Returns (BFIG) Trust require the immediate encashment of the GS note in order to fund the repayment of the principal amount due to depositors. We are past the date which was 'as soon as practicable' after September 5, 2007." A copy of the October 2, 2007 e-mail is attached hereto as **EXHIBIT K**.

32. On October 4, 2007, co-trustee Farmiloe reported to Trident that he had been informed by AACU's Mr. Lobe that the problem was not the safety of the Goldman Sachs notes but instead was the means of returning the capital.

33. Unbeknownst to Trident and without its approval, AACU had, at some undisclosed time, caused transfer of the Goldman Sachs notes to Fidelity account no. Z71512150. Trident discovered the transfer in early October 2007.

34. Since that date, there has been a series of communications amongst the pertinent parties, but the funds remain under the control of AACU at Fidelity.

35. On October 4, 2007, Farmiloe confirmed that he would obtain evidence for Mr. Lobe that the Trust had an interest in the Goldman Sachs notes. I understand that Bridford was subsequently that the Trust did have a registered interest in the assets held. **SEE EXHIBIT L.**

36. Bridford obtained and provided to the co-trustees a copy of an account statement held at Fidelity showing Goldman Sachs 6.125% notes in the amount of $16,378,824 held in account no. Z71512150. The statement does not show Trident as a registered account holder. A copy of statement is attached hereto as **EXHIBIT M**.

37. Trident has contacted Fidelity and ascertained that the account is in the name of AACU and that the signatories are AACU's Mr. Lobe and AACU's Gudron Settele. Although Bridford had advised Trident and Farmiloe that the Trust had a registered interest in the Fidelity account, this is not the case.

38. On October 9, 2007, Trident's Mr. Grant met with co-trustee Farmiloe. As a result of this meeting, a letter was sent to Bankhaus Lampe to which the funds were originally transferred to the AACU account in August 2006. (See ¶ 19-20 above)  A copy of the letter is attached hereto as  **EXHIBIT N.** Trident made a demand upon Bankhaus Lampe for return of the Trust funds deposited in AACU's account. However, Trident has received no response from Bankhaus Lampe.

39. From the differing stories and rationale provided by AACU, Trident believes that AACU may have used portions of the funds for its own purposes and is unable to make good on return on the funds in their entirety.

40. Bridford's Neil Marlow was contacted by Mr. Grant and Farmiloe during the October 9, 2007 meeting, and advised that he had spoken to AACU's Mr. Lobe on that day. Mr. Lobe advised that he was continuing to seek alternative means of repaying the funds to the Trust. Throughout, Mr. Lobe has advised Bridford and Farmiloe that the Goldman Sachs notes constituted appropriate and sufficient security.

41. Farmiloe spoke to AACU's Mr. Lobe on October 9, 2007 to demand repayment from Mr. Lobe of the Goldman Sachs notes that were security for the Trust funds. Mr. Lobe told Farmiloe that there "were issues" if the Goldman Sachs notes at Fidelity were sold. Farmiloe could not obtain an explanation with regard to the precise "issues" being referenced by Mr. Lobe. In any event, AACU continued to delay repayment.

42. Co-trustee Farmiloe requested to be added as a signatory to the Fidelity AACU account and Mr. Lobe agreed to arrange the paperwork with Fidelity. Mr. Lobe has failed to arrange for the paperwork to make Farmiloe a joint signatory.

43. On October 9, 2007, Trident received a letter from solicitors representing Morgans and other investors, giving Trident a deadline of 4:00 p.m. on Thursday, October 11 to respond with confirmation that the amounts would be repaid to investors immediately and stating that otherwise "steps would be taken" to recover the money.

44. Trident has been besieged by investors and their representatives with threats to be sued in a class action if the investors' funds, due on September 5, 2007, are not returned. Such a suit would cause substantial and incalculable harm to Trident's reputation as a trust company.

45. By letter dated October 12, 2007, Trident informed Fidelity that it had an agreement with AACU for return of £9,452,000 which was to be repaid on September 5, 2007. A copy of the letter is attached hereto as **EXHIBIT O**. Trident further informed Fidelity that the

9

return of capital was represented by the Goldman Sachs notes and that the notes were not to be sold, charged or disposed of in any way to the detriment of the Trust pending further instructions.

46. By letter dated October 15, 2007, a copy of which is attached hereto as **EXHIBIT P**, Fidelity confirmed that it had temporarily restricted the account for ten (10) business days, that is, until October 29, 2007. Fidelity stated that it would restrict the funds beyond that date only upon service of a restraining order or other process issued by a court.

47. In the meantime, on or about October 16, 2007, Trident learned that AACU's Mr. Lobe planned to transfer the Goldman Sachs notes from the Fidelity account to National Bank of Canada and sought Trident's approval to withdraw the effectiveness of the restriction on the account to do so.

48. On October 21, 2007, AACU agreed that the notes at Fidelity are the same notes that were deposited at Bankhaus Lampe. **SEE EXHIBIT Q.**

49. Because the Trust is equitably entitled to the Goldman Sachs notes and because Trident believes that it may lose the ability to control the notes, their proceeds and the investors' funds, Trident has refused to agree to allowing further transfer of the notes and/or funds.

50. Upon information and belief, there have been fraudulent transfers of, and dealings with, Trust property and wrongful exercise of dominion and control over Trust assets that puts the Trust property in danger of being placed beyond the control of the Trust and the Trustees.

## *FIRST CLAIM FOR RELIEF*
### *(Conversion)*

51. Plaintiff repeats and realleges the prior paragraphs of the Complaint as if fully rewritten herein.

52. AACU knew and understood that the funds deposited in its account at Bankhaus Lampe were Trust funds to be used for Trust purposes. AACU, without right or justification, has

10

wrongfully and intentionally converted Trust funds and the Goldman Sachs notes by transferring them from Bankhaus Lampe to the Fidelity account over which only AACU is a named owner and beneficiary.

53. As a result of AACU's intentional and wrongful conduct, Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunction enjoining Defendants, and anyone acting in concert with them, from assigning, transferring or otherwise disposing of any portion of the Goldman Sachs notes and other funds in Fidelity Account no. Z71512150 pending further order of the Court.

54. Plaintiff is further entitled to an order enjoining Defendant Fidelity to transfer to the Trust's RBS Trust account all right, title and interest in the Goldman Sachs notes for proper distribution to the Trust investors.

### SECOND CLAIM FOR RELIEF
*(Constructive Trust)*

55. Plaintiff repeats and realleges the prior paragraphs of the Complaint as if fully rewritten herein.

56. Defendant AACU holds in Fidelity Account No. Z71512150 Goldman Sachs notes in the amount of £9,452,000 proceeds of which are intended for distribution to Trust investors at the end of the 52 week period.

57. Defendant AACU has failed and refused to deliver the funds and notes, has failed to provide an adequate explanation as to why it had failed and refused to deliver the notes and funds, and has failed and refused to return the notes and funds to the Trust account at RBS.

58. Defendants AACU and Fidelity have no right to continued possession of Plaintiff's funds and Plaintiff is entitled to an order imposing a constructive trust upon the funds and notes in the Fidelity account.

11

## THIRD CLAIM FOR RELIEF
### *(Constructive Fraud)*

59. Plaintiff repeats and realleges the prior paragraphs of the Complaint as if fully rewritten herein.

60. The actions of AACU and transfer of the funds and Goldman Sachs notes from Bankhaus Lampe to the Fidelity account constitute constructive fraud and Defendants should be equitably estopped from assigning, transferring or otherwise disposing of any portion of the Goldman Sachs notes and other funds in Fidelity Account no. Z71512150 pending further order of the Court.

## FOURTH CLAIM FOR RELIEF
### *(Tortious Interference With Contracts)*

61. Plaintiff repeats and realleges the prior paragraphs of the Complaint as if fully rewritten herein.

62. Trident and Farmiloe, as co-trustees, have a contractual relationship with those individuals and entities that have invested funds with the Trust and are obligated at the end of the 52 week period to pay to the investors the principal and guaranteed interest.

63. Further, the Trust Deed is a contract between Trident and Farmiloe and provides, in part, that the Trustees shall hold the Trust funds and administer the funds in accordance with the provisions of the Trust Deed.

64. Section 4.2 of the Trust Deed provides that the trustees shall cause the principal amount of the client funds, together with the guaranteed interest, to be paid to the client at the end of the 52 week period.

65. The 52 week period ended on September 5, 2007.

66. AACU has failed and refused to release to Trident the notes and funds required to be repaid to the Trust's investors.

67. AACU is aware of the existence of the Trust Deed and of the requirement that Trust funds be paid to clients at the end of 52 weeks. AACU is further aware of the contractual relationship between the Trustees and the investors with respect to investment of monies in the Trust.

68. AACU has intentionally and without justification prevented Trident from performing its obligations under the terms of its relationship with the investors and under the terms of the Trust Deed.

69. As a result of AACU's intentional and wrongful conduct, Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunction enjoining Defendants, and anyone acting in concert with them, from assigning, transferring or otherwise disposing of any portion of the Goldman Sachs notes and other funds in Fidelity Account no. Z71512150 pending further order of the Court.

70. Plaintiff is further entitled to an order mandating that Defendant Fidelity transfer to the Trust's RBS account all right, title and interest in the Goldman Sachs notes for proper distribution to the investors.

## FIFTH CLAIM FOR RELIEF
*(Restitution)*

71. Plaintiff repeats and realleges the prior paragraphs of the Complaint as if fully rewritten herein.

72. Trust funds and assets have been transferred to Defendants AACU and Fidelity. Plaintiff is entitled to return of the monies and assets received by AACU and held in Fidelity Account No. Z71512150.

73. Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunction enjoining Defendants, and anyone acting in concert with them, from assigning,

transferring or otherwise disposing of any portion of the Goldman Sachs notes and other funds in Fidelity Account no. Z71512150 pending further order of the Court.

74. Plaintiff is further entitled to an order mandating that Defendant Fidelity transfer to the Trust's RBS account all right, title and interest in the Goldman Sachs notes for proper distribution to investors in the Trust

### SIXTH CLAIM FOR RELIEF
*(Unjust Enrichment)*

75. Plaintiff repeats and realleges the prior paragraphs of the Complaint as if fully rewritten herein.

76. AACU has been conferred benefits to which it is not entitled. AACU and Fidelity have possession and control over Trust funds to which they are not entitled.

77. Trident is entitled to return of the Trust assets, including the Trust funds and the Goldman Sachs notes for distribution of the proceeds thereof to the Trust's investors.

78. Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunction enjoining Defendants, and anyone acting in concert with them, from assigning, transferring or otherwise disposing of any portion of the Goldman Sachs notes and other funds in Fidelity Account no. Z71512150 pending further order of the Court.

79. Plaintiff is further entitled to an order mandating that Defendant Fidelity transfer to the Trust's Bank of Scotland Trust account all right, title and interest in the Goldman Sachs notes for proper distribution to investors in the Trust.

**WHEREFORE,** Plaintiff Trident Trust Company (UK) Ltd respectfully requests that this Court grant it the following relief:

    I.    As to the all Claims for Relief, a temporary restraining order and preliminary and permanent injunction:

    a. enjoining Defendants, and anyone acting in concert with them, from assigning, transferring or otherwise disposing of any portion of the Goldman Sachs notes and other funds in Fidelity Account no. Z71512150 pending further order of the Court;

    b. mandating Defendant Fidelity to transfer to the Trust's Bank of Scotland Trust account all right, title and interest in the Goldman Sachs notes for proper distribution to investors in the Trust;

II. An award of attorneys' fees and costs; and

III. Such other relief in law or equity to which may be entitled.

Respectfully submitted,

**OF COUNSEL:**

_____
Ronald L. House, Jr. (0036752)
Trial Attorney
Benesch Friedlander Coplan & Aronoff LLP
41 South High St.
Suite 2600
Columbus, Ohio  43215
Telephone:  (614) 223-9300
Facsimile:  (614) 223-9330
rhouse@bfca.com

Eric L. Zalud
Benesch Friedlander Coplan & Aronoff LLP
2300 BP Tower
200 Public Square
Cleveland, Ohio  44114-2378
Telephone:  (216) 363-4500
Facsimile:  (216) 363-4588
Email:  ezalud@bfca.com

J. Allen Jones, III (0072397)
Benesch Friedlander Coplan & Aronoff LLP
41 South High Street, 26th Floor
Columbus, Ohio 43215
Telephone: (614) 223-9300
Facsimile: (614) 223-9330
E-mail: ajones@bfca.com

Attorneys for Plaintiff Trident Trust Company (UK) Ltd

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

_____
Ronald L. House