**TRUST DEED**

**FOR THE ESTABLISHMENT OF THE OPTIMUM RETURNS (BFIG) SCHEME**

Date    18 January 2006

Parties

(1)    NEIL DAVID MARLOW of Bridford Optimum Returns Ltd, Bridford House, Broughton Hall, Skipton, North Yorkshire, UK BD23 3AE (the "First Trustee"); and

(2)    ANDREW DERRICK JOHN FARMILOE of Dawsons, 2 New Square, London, UK WC2A 3RZ (the "Second Trustee")

Recitals:

(A)    The Trustees hereby constitute the Optimum Returns (BFIG) Trust ("the Scheme")

(B)    The purpose of the Scheme is to operate the Scheme in accordance with the Terms and conditions set out in the Schedule.

(C)    By executing this deed the Trustees confirm and acknowledge that they will administer the Scheme in accordance with the said Terms and Conditions

Operative provisions:

**1.    INTERPRETATION AND CONSTRUCTION**

1.1    This deed shall be governed by and interpreted according to English law.

1.2    In this deed unless inconsistent with the context:

   1.2 1    References to the masculine gender include the feminine;

   1.2.2    Words implying the singular include the plural and vice versa;

   1.2.3    Any reference to a statute or regulation includes any subsequent statutory modification or re-enactment of it;

   1.2 4    Any reference to a statute includes any regulations made pursuant to or in connection with that statute;

1 3    The contents and the headings to the clauses of this deed are for reference purposes only and have no effect on the interpretation of this deed.

1

75219-7

**EXHIBIT**

tabbies®

A

1.4    The following words and expressions have the meanings:

"FSMA" means the Financial Services and Markets Act 2000.

"Fund" means the fund established under clause 32.

"Inland Revenue" means the Board of Inland Revenue.

"Member" means a person who pays a deposit in connection with the Scheme

"Professional Trustee" means a Trustee who is in the business of providing a trustee service for payment

"Terms" means the Terms and Conditions set out in the Schedule.

"Trustees" means the trustee or trustees for the time being of the Scheme, including the First Trustee and the Second Trustee.

2.    ESTABLISHMENT OF THE SCHEME

2.1    The Trustees hereby establish the Scheme as a bare trust to commence on and operate as from the Commencement Date.

2.2    For the avoidance of doubt the perpetuity period (if applicable applicable to the Scheme) is the period beginning on the date of this deed and ending on the 80th anniversary of that date, or any longer period as may then be lawful.

2.3    The Trustees shall operate the Scheme in accordance with the Terms for the benefit of the Members as bare Trustees.

2.4    The Trustees may amend the Terms from time to time.

3.    THE FUND AND SCHEME CONTRIBUTIONS

3.1    For the purposes of the Scheme, the Trustees shall administer the Fund which shall be made up from:

3.1.1    The deposits of Members in accordance with the Terms; and

3.1.2    All interest and income accruing from whatsoever source from time to time received by and for the time being held by the Trustees for the account of the Fund.

2

75219-7

3.2 The Trustees shall hold the Fund and administer it for the purposes of the Scheme in accordance with the provisions of this deed.

## 4. APPOINTMENT AND REMOVAL OF TRUSTEES

**Constitution of trustees**

4.1 The number of Trustees shall be at least two.

**Trustees' power to retire**

4.2 Any Trustee may retire from office as a Trustee at any time by giving one month's notice in writing to the Continuing Trustees. At the end of the notice period, the retiring Trustee shall be deemed to have retired from office as a Trustee.

4.3 Any Trustee (whether an individual or a corporate body) may, by deed, validly retire from office as a Trustee and be discharged from the trusts of the Scheme whether or not there remain at least two individuals as Trustees or a trust corporation (as defined in the Law of Property Act 1925) as sole Trustee, so long as there remains at least one Trustee (whether an individual or a corporate body).

**Ceasing to be a trustee**

4.4 A Trustee ceases to be a Trustee, and is removed from office, in any of the following circumstances:

4.4.1 If any terms and conditions applicable to his office as Trustee require him to cease to be a Trustee; or

4.4.2 If he dies.

4.5 The appointment, removal or retirement of any individual or corporate body as a Trustee of the Scheme shall be formally evidenced by a supplemental deed executed by the continuing Trustees and by the individual or corporate body who is to be appointed, removed or who is to retire as a Trustee.

4.6 All costs, charges and expenses incurred in connection with the preparation and execution of any supplemental deed evidencing the appointment, removal or retirement of a Trustee shall be payable in accordance with clause 11

## 5. REMUNERATION, FEES AND EXPENSES OF TRUSTEES

5.1 Any Trustee may charge and be paid such remuneration or fees for his services in connection with the Scheme in accordance with the Terms.

75219-7

5.2    Any Trustee who is a solicitor, accountant or other person engaged in any profession or other person engaged in any profession or business may charge and be paid all usual professional and other charges for work done by him or his firm in connection with the Scheme, whether or not in the ordinary course of his profession or business and including acts which a Trustee who is not in any profession or business and including acts which a Trustee who is not in any profession or business could have done personally.

5.3    Subject to the provisions of the Terms, the Trustees shall be entitled to retain any commission receivable in respect of the Scheme and to be interested directly or indirectly whether as director, shareholder, employee, contractor or otherwise in any intermediary with whom the Trustees may deal without being liable to account for any profit arising out of or in connection with such interest.

6.     **TRUSTEES' MEETINGS AND RESOLUTIONS**

6.1    Except where a corporate body is sole Trustee, the Trustees shall meet for the despatch of business and regulate their meetings as they think fit

6.2    Two Trustees present at a meeting shall form a quorum.  The chairman of the meeting shall be appointed by agreement between the Trustees present at the meeting or, in default of agreement, by lot from among them.  All business brought before a Trustees' meeting shall be decided by a majority of the votes of the Trustees present and voting on the business   Where more than two Trustees are present and in the event of any equality of votes, the chairman of the meeting shall have a casting vote. The Trustees shall act by a majority of votes

6.3    Where there is more than one Trustee, a resolution in writing signed by a majority of the Trustees, but of which due notice has been given to all the Trustees individually, shall be as valid as if it had been passed at a meeting of the Trustees. For this purpose, a resolution may consist of several documents in the same form, each signed by one or more of the Trustees.

6.4    Where a corporate body is a Trustee, the powers, duties and discretions of the Trustee shall be exercisable by its Board of Director or by any of its authorised officers.

7.     **TRUSTEES' LIABILITY AND INDEMNITY**

7.1    Subject to sub-clause 7.2, no Trustee shall be responsible, chargeable or liable in any manner whatsoever for or in respect of anything except:

       7.1.1   Actual fraud;

4

75219-7

7.1.2 A fine imposed by way of penalty for an offence of which that Trustee is convinced;

7.1.3 In the case of a Professional Trustee, liability for such acts of negligence as breach the special duty of care for a Professional Trustee up to the extent of the loss in the assets of the Fund caused by the breach on the part of the Professional Trustee; and

7.1.4 Any other liability which, by law, cannot be excluded or restricted.

7.2 No Professional Trustee shall incur liability:

7.2.1 For the acts, defaults and omissions of other Trustees whose acts, defaults or omissions have been contrary to oral or written advice given by or on behalf of that Professional Trustee; and

7.2.2 In respect of decisions taken by the other Trustees when that Professional Trustees was not a party to the decision, unless proper notice under the terms of the Scheme of either the meeting at which those decisions were taken or the of the resolutions which effected those decisions had been given to the Professional Trustee.

## 8. PERSONAL INTEREST OF TRUSTEES

8.1 Subject to sub-clause 8.2, a decision of, or the exercise of a power or discretion by, the Trustees shall not be invalidated or questioned on the ground that any of the Trustees (or directors of a corporate Trustee) had a direct or personal interest in the result of the decision or the exercise of the power or discretion.

8.2 Where a Trustee (or a director of a corporate Trustee) is interested in any decisions of, or exercise of any power or discretion by, the Trustees, he shall declare the nature of his interest at the meeting of the Trustees, at which the decision is to be taken or the power or discretion is to be exercised.

8.3 A general notice given to the Trustees by Trustee (or a director of a corporate Trustee) to the effect that he has a direct or personal interest in any decision or in the exercise of any power relating to the Scheme is sufficient declaration of interest. No such notice is of effect unless either it is given at a meeting of the Trustees or the Trustee (or director of a corporate Trustee) takes reasonable steps to ensure that it is brought up and read out to the next meeting of the Trustees after it is given.

8.4 A Trustee (or a director of a corporate Trustee) who is a beneficiary under the Scheme may retain for his own absolute benefit (subject to the conditions of the Scheme) all benefits accruing to him as a beneficiary or otherwise

5

75219-7

9. **GENERAL POWERS OF THE TRUSTEES**

9.1 The Trustees shall have all powers, rights and privileges in connection with the Scheme necessary or proper to enable them to carry out all or any transaction, act or deed or anything else arising under or in connection with the Scheme.

9.2 Except where otherwise specified, the Trustees shall determine all questions and matters of doubt arising in connection with the Scheme.

9.3 The Trustees have power to give guarantees, warranties, indemnities and undertakings (including by binding the Fund as security).

9.4 The receipt of the Trustees shall be a complete and sufficient discharge to any person paying money to the Trustees.

10. **ADMINISTRATION**

10.1 The Trustees shall keep accounts relating to the Fund and a record of members and of all other matters which should be properly recorded for the purposes of the Scheme. These records shall be sufficient to explain all transactions and identify all assets and liabilities relating to the Scheme and to disclose its financial position.

10.2 The Trustees may make any arrangements generally for the administration of their duties as they think fit.

10.3 The Trustees may make arrangement they consider necessary for dealing with receipts and payments under the Scheme. The Trustees shall keep any money they receive in a separate account kept by them or an institution authorised under the FSMA.

10.4 The Trustees may, from time to time by unanimous decision, delegate in writing their powers to draw cheques on any bank account, to any one or more of their number or to any staff, agents, custodians, brokers or other nominees as they shall decide.

10.5 The Trustees may give, vary and revoke instructions relating to the custody and disposal of any part of the Fund, to the signing of proposal forms and certificates of membership and to the giving of receipts and discharges in connection with the Scheme on the Trustees' behalf. Every such receipt and discharge shall be as valid as if it were given by all Trustees.

10.6 The production of a written authority of the Trustees shall be sufficient protection to any person taking receipts and discharges or otherwise acting under that authority. Unless a person has received written notice of the revocation of that authority, he shall be entitled to act on the assumption that it remains in force and to be indemnified out of the Fund in respect of any claim arising out of any such act done

75219-7

in good faith and in respect of all costs, charges and expenses incurred in connection with it, despite any intervening change in the Trustees.

10.7    Any valid receipt given to an agent, custodian, broker or nominee shall be a good and sufficient discharge to the Trustees.

10.8    The Trustees shall apply the Fund in accordance with the Terms.

## 11.    EXPENSES OF THE SCHEME

All costs, charges and expenses including Trustee training costs incurred in connection with or in relation to the Scheme and any remuneration of the Trustees shall be borne in accordance with the Terms

## 12.    MISCELLANEOUS

### 12.1    Tax deductions

The Trustees may deduct from any payment from the Scheme any tax or duty for which they may be liable or accountable in respect of that payment and the Trustees shall be responsible for the payment to the Inland Revenue of any tax due in relation to the Scheme.

### 12.2    Minors and incapacitated beneficiaries

12.2.1  If any benefit under the Scheme is payable to a person who is under the age of 18 years or, in the opinion of the Trustees, is suffering from any mental or physical incapacity and is unable to manage his affairs or to give a proper receipt for any benefit payable to him, the Trustees may:

(a)    Pay the whole or part of the benefit to any person or corporate body or institution having the care of the person concerned for the benefit of that person as the Trustees think fit, or

(b)    Retain the whole part of the benefit and at any later date pay the amount retained to the person concerned or to any other person selected by the Trustees for his benefit.

12.2.2  A certificate by a qualified medical practitioner that any person is suffering from any physical or mental incapacity may be accepted by the Trustees as conclusive evidence of the fact.

12.2.3  The receipt of the person to whom any payment under this sub-clause 12.3 is made shall completely discharge the Trustees for the amount paid and the

7

Trustees shall have no further responsibility in relation to the payment concerned

## 13.  EXECUTION OF DEED

Each of the parties to this document intends it to be a deed and agrees to execute and deliver it as a deed

IN WITNESS of this the First Trustee and the Second Trustee have executed this deed on the date first shown above.

75219-7

SCHEDULE

**Terms and Conditions**

<u>Definitions</u>

In these Terms and Conditions, the following expressions shall bear the meanings set out opposite them respectively unless the context requires otherwise.

| | |
|---|---|
| **Application Form** | The application form completed by the Client referring to these Terms and Conditions |
| **Bank Guarantees** | guarantees and/or indemnities issued by a Qualifying Bank in favour of the Trust Bank and meeting the Guarantee Criteria described in clause 2.5 |
| **Client** | the client(s) whose name(s) and address(es) are set out in the Application Form |
| **Deposit** | the deposit paid by the Client as stated in the Application Form |
| **FSA** | the Financial Services Authority |
| **Guarantee Period** | the period of fifty-two weeks from the date of issue of the Bank Guarantee |
| **Qualifying Bank** | a bank authorised and regulated by the FSA in the United Kingdom and accredited at the date of the relevant Bank Guarantee with an international status rating as stipulated in clause 2.5 |
| **Syndication Period** | the period from the date of initial payment of the Deposit until the Date of issue of the Bank Guarantee or until the expiry of six week's from the date of initial payment of the Deposit whichever shall be the earlier |
| **the Company** | (an) intermediary(ies) selected by the Trustees from time to time |

9

| | |
|---|---|
| **The Trust** | **Optimum Returns (BFIG) Trust** of Bridford House, Broughton Hall, Skipton, North Yorkshire, United Kingdom, BD23 3AE constituted by the Trust Deed |
| **Trust Account** | the account in the name of the Trust held at the Trust Bank |
| **Trust Bank** | Allied Irish Bank (GB) or such other bank acting for the Trust as referred to in the Application Form or such other bank which is appointed by the Trustees from time to time |
| **Trust Deed** | the Trust deed dated [          ] constituting the Trust (as amended from time to time) |
| **Trust Operating Account** | the account (if any) in the name of the Trust held at the Trust Operating Bank |
| **Trust Operating Bank** | such bank which the Trustees may appoint from time to time to hold funds to be used for the obtaining of the Bank Guarantees |
| **Trustees** | the Trustees of the Trust in office from time to time |

1. **BACKGROUND**

1.1   The Client participates in this agreement as a depositor pursuant to the following terms and conditions.

1.2   The Company acts as facilitator in arranging for the Client the benefit of the relevant Bank Guarantees, with respect to capital and interest, and structuring the bank product.

1.3   The Trustees shall act on behalf of the Client in relation to the Deposit upon these Terms and Conditions.

2. **DEPOSIT**

2.1   The Deposit shall be held in the Trust Account.

2.2   The Trustees will arrange for a statement of account to be sent to the Client from the Trust to confirm the receipt of the Deposit.

2.3   Upon receipt of a sufficient amount of funds in the Trust account the Trustees may transfer this amount to the Trust Operating Account if required by the terms of the Bank Guarantee

75219-7

2.4    The Trustees may grant to the Company an Information Power of Attorney in respect of the Trust Account and Trust Operating Account, whereby the Company shall have the right to receive information about the account status and balance during the Period of Deposit but shall not be entitled to operate the accounts save for the purpose of procuring the Bank Guarantees.

2.5    The Trustees shall endeavour to procure with the assistance of the Company the agreement of a Qualifying Bank to issue a letter of credit or guarantee to the effect that it will repay funds at the end of the Guarantee Period to a return on funds placed with such bank of not less than six per cent. (6%) of the principal amount of such funds and the Trustees may place such funds on deposit with such bank in order to procure such letter of credit or Bank Guarantee. The Qualifying Bank shall have a Moody's rating of at least A, but preferably Aa, or an internationally recognised status equivalent.

2.6    Upon receipt of confirmation of the Bank Guarantee and the Trustees have confirmed acceptance, the Trustees may release the funds on deposit which will be transferred as part of the instructions relating to the Bank Guarantee and the funds including the Deposit shall remain on deposit during the Guarantee Period.

2.7    In the event that the Bank Guarantee can not be supplied to the satisfaction of the Trustees in the Syndication Period, all funds deposited in the Trust Accounts (plus any interest in accordance with 3.1 and return in accordance with 3.2 below) shall be returned to the Client, upon which all agreements relating to this deposit shall terminate.

2.8    The Client undertakes not to demand repayment of the Deposit before expiry of the Syndication Period (6 weeks) and also the Period of Deposit (52 weeks), unless there is a material breach of this contract subject to the Client's right to cancel the application in writing sent by recorded delivery within 14 days of payment of the deposit into the Trust Account.

2.9    The Trustees reserve the right to deduct from any payment to the Client an amount equal to income tax at the basic and lower rates on calculated on the whole or part of any interest or other return paid or payable to the Client.

## 3.    INTEREST ON THE DEPOSIT AND COMMISSION

3.1    During the Syndication Period, the Client shall be entitled to the interest that is actually credited to the account by the Trust account-holding Bank.

3.2    In addition to interest in accordance with 3.1, the Client is entitled during the Period of Deposit to a return of not less than 6% of the amount of the Deposit, as stated in

75219-7

the Bank Guarantee, at the end of the Guarantee Period which shall be paid into the Trust Account with full return of original principal.

3.3   In addition to the return in 3.2 above, the Trustees shall account to the Client for such amount by way of rebate of commission agreed in advance (if any), subject to receipt by the Trustees of payment. This will be paid into the Trust account at the end of the Guarantee Period.

3.4   Subject to the provisions of this clause 3, the Trustees shall be entitled to retain any commission receivable in respect of the Deposit and to be interested directly or indirectly whether as director, shareholder, employee, contractor or otherwise in the Company and in any intermediary with whom the Trustees may deal without being liable to account for any profit arising out of or in connection with such interest

## 4.   REPAYMENT OF THE DEPOSIT

4.1   The Trustees shall cause the principal amount of the Deposit together with the return calculated in accordance with clause 3 to be repaid to the Client at the end of the Guarantee Period

4.2   In the event that the Bank Guarantee is not procured within the Syndication Period, the Deposit shall be returned without delay, and interest in accordance with 3.1, less customary transaction costs i.e. bank charges, shall be paid to the Client, upon which the agreement relating to the Deposit shall terminate.

4.3   Monies due to the Client shall be paid to the credit of the Client's bank account stated in the Application Form or failing that by cheque sent at the Client's risk to the address stated in the Application Form.

## 5.   NO RIGHT OF HYPOTHECATION

The Client shall not charge, pledge or otherwise encumber the funds paid into the Deposit

## 6.   CONFIDENTIALITY

6.1   The Trustees and the Company shall keep the information relating to the Client set out in the Application Form and any other information relating to the Client which shall be received by the Trustees and/or the Company confidential and shall not disclose the same save to such employees, advisers and counterparties as shall need to know the same for the purposes of carrying out the agreement.

75219-7

6.2    The Client shall keep the information relating to the agreement confidential and shall not disclose the same to any other person save subject to confidentiality when required for the purposes of obtaining professional advice.

6.3    Nothing in this clause shall apply to disclosure of any information which may be required by law or for disclosure to a competent regulatory authority.

7.    **APPLICABLE LAW AND GENERAL**

7.1    The construction and interpretation of this agreement shall be in accordance with the laws of England and the parties shall submit to the exclusive jurisdiction of the courts of England.

7.2    This Agreement contains the entire agreement of the parties regarding the subject matter hereof and there are no other promises or conditions in any other agreement whether oral or written. The Client acknowledges that he relies upon no representations given by or on behalf of the Trustees or the Company for the purpose of this agreement save for such representations as are expressed in these Terms and Conditions. All parties understand and acknowledge that the obligations of the Trustees and the Company are exclusively as set forth in this Agreement.

7.3    This Agreement shall be binding not only upon the parties but also upon their legal representatives, successors and assigns.  The rights and obligations under this Agreement shall inure to and be binding upon the lawful successors and assigns of the parties.

7.4    Each party hereto represents that it or its representative has the requisite authority to enter into this Agreement.

7.5    Any notice to be given pursuant to this agreement shall be in writing and sent to the recipient at the address set out in the Application Form or to such other address as the recipient shall have given to the other parties in writing for such purpose. Any notice shall be sent by pre-paid post or by facsimile transmission or by personal delivery and shall be deemed to have been served upon the expiry of 48 hours after posting in case of pre-paid post and upon the business day following transmission in the case of facsimile transmission provided that the sender is in possession of a successful transmission report.

75219-7

SIGNED AS A DEED by)

**NEIL MARLOW**          )

in the presence of:

W  Signature  *Gaylor*

I   Name  MRS CAROLE TAYLOR

T   (print in capitals please)

N  Address  91 THE LAUND

E   LEYLAND

S   LANCASHIRE  PR26 7XX

S   Occupation  PERSONAL ASSISTANT.


SIGNED AS A DEED by          )

**ANDREW DERRICK JOHN FARMILOE**          )

in the presence of:

W  Signature  *Katrin Terre*

I   Name  KATRIN TERRE

T   (print in capitals please)

N  Address  2 New Square

E   Lincoln's Inn

S   London  WC2A 3RJ

S   Occupation  P.A.

14

75219-7